Good afternoon. Our best case of the day is 4-14-0462 Paul Toth v. Christy Howrey. For the appellant is Attorney Landacre. And for the athlete, Attorney Ann Martinez. Mr. Landacre, am I saying your name correctly? It's Landacre. Landacre, sorry. Are you ready to proceed?  Alright, thank you. You may proceed. If it may please the court opposing counsel, my name is Ron Landacre and I represent the respondent appellant Christy Howrey in this cause of action. What I will do is I will give a brief overview of the cause in this case. The court had previously requested that we give some, that we discuss this matter as it relates to in-rape paternity of J.W. Which I will do here to some extent and then I will continue on with the balance of my argument from there. This is a paternity action in Champaign County, Illinois where paternity was established between Christy Howrey and the respondent and the petitioner in this matter as it relates to a minor child. Pursuant to that custody was established, granted to Ms. Howrey, my client, and after that point there was some visitation which was granted to the petitioner in this matter. In November 2012, the court entered an order and stated that visitation would be reserved as far as it related to some holiday visitation and some summertime visitation. So what we are arguing, what we are discussing here relates to the court in 2014 actually extending that visitation and whether it used the proper standard and whether that standard was arbitrary and capricious. In looking at the case in repairage of J.W., the Supreme Court makes a determination that in a paternity action when you have a, when a non-custodial parent is asking for visitation, the proper test to use is a best interest standard which is more broad and takes into account more factors than the 607 rebuttable procedure. And then there is a presumption test which is defined by the Illinois Marriage Act. The reason I believe that the court wanted to give a little bit of, have some discussion or at least have us comment on this is this case is similar to what the issues were in that case in a lot of respects. In that case, the court, the circuit court actually took a look at the best interests of the child standard and looked at a broader scope as far as what the actual, what actually to review and what actually to look at in determining whether a non-custodial parent should get visitation. And the rationale that the court used in its decision was looking at the context and scope of the relationship from a couple that has been married and is getting divorced as opposed to a paternity action. And what the court contemplated was that with a paternity action, there is more elements that you need to take into factor when you are trying to make a determination as far as what kind of visitation there should be. So in any case, with the best interest standard, the burden is on the petitioner, the non-custodial parent, as it is in this case. Now, in looking at the record and in looking at the court's determination from March of this year, the court stated that in making the decision that the petitioner should have the visitation, the court stated in the record that the court didn't see any harm to the child by giving the father additional hours of visitation, which is what he was requesting. In other words, there was information in the record here which seemed closer to a rebuttable presumption standard than it would a best interest standard. The court reviewed, in looking at this, the court stated, well, what's the harm in actually asking for this additional or giving this additional visitation if the petitioner wasn't working at the time and there wasn't anything else to really consider? And at some point in the record after that time, the trial court stated that if the respondent mother wanted to present some further information regarding having some testimony related to this, whether it be in the form of another expert or otherwise, he would consider it. That gets to a burden-shifting arrangement that I think is addressed in the paternity of JW as well as in this case. We have a situation here where the respondent father is getting the visitation in a paternity case because, as the trial court stated, what was the harm in doing that? And giving the father the additional hours when he's not working as a criteria, as a factor to look at. The court also took a look at the testimony of Judy Osgood. I did want to just bring that a little bit into context. Judy Osgood was brought in on this case by the court not as a guardian ad litem or to necessarily make a custody evaluation, but to be a parental coordinator. In other words, she was there to determine the limited issues of whether there is, whether the parties have actually to deal with Christmas time and summer visitation, and then further to try to diffuse the tension between the parties. This was something that, in the trial court, a motion to strike Judy Osgood's testimony was done, partly because that had actually been a little more broad, or the anticipation was the testimony would be more broad, than simply dealing with the conflict between the parties and otherwise. So the other issue here is that Judy Osgood, in this matter, did not actually make any sort of a custodial arrangement, although she did testify to some of these factors. But to that extent, I don't, the case started from a presumption that additional time with the father would ultimately be beneficial to the minor child. And what, in fact... Are you saying that was a mistake? I'm not... Or are you saying that's what the law provides for? Well, the presumption that additional time, I don't believe that's what the law provides for with the best interest. And again, that starts to get to an issue of it there being a rebuttable presumption that that's the case. Under the Marriage Act, that might be true, but I don't believe that that's the actual law dealing with paternity. There, again, as the court stated, it has to look at more broad circumstances, more factors, and try to make a determination on whether visitation should be granted and to what scope. And whether it's in the actual best interest of the child. So it's your position, if I'm understanding you, that the presumption that the maximum involvement and cooperation of both persons' parents regarding the physical, mental, and moral and emotional well-being of the child is in the best interest of the child does not apply in a paternity case? Well, I think there's a question. That's using an actual best interest standard. That gets to another argument where as far as, you know, was that done arbitrarily or capriciously? It is something that is dealt with in a paternity case. But our argument here is the factors that the court used in looking at that and the way that the court actually rephrased this as part of its decision sounds more like a rebuttable presumption in this matter. Isn't that what it is under the statute? I guess I'm having trouble following. In J.W., the court said we look at the best interest factors under 602C, right? Correct. And in 602C, the statute talks about the maximum parental involvement is in the child's best interest. There's a presumption to that effect, which can be overcome by evidence that it would not be in the child's best interest. Well, the rebuttable presumption is something that deals more with 607 of a marital act. But again, it's a presumption, and I think that J.W. states this, that the initial burden is on the noncustodial parent to show that the visitation is in the best interest of the child. So to that extent, I don't believe that... But there was visitation. I'm sorry? There was visitation. Temporary visitation had already been awarded. That's correct. Then a permanent order of visitation is entered. That's correct. What difference does it make if there's an increase between temporary and permanent? Well, again, that's something that, because this is a Paternity Act case, the court has to look at that best interest standard in order to make that determination as far as whether there should be more visitation in this clause. So that's what we're saying. And then again, too, when the court made a determination here that you have to get this extra visitation, I mean, it doesn't hurt that if the petitioner father wasn't working, the court should be granting it. The testimony showed in the actual trial record that the father was indeed working during some of the time that he was asking for the additional visitation. So from a standpoint of having the maximum involvement with a child, that's one thing. But the petitioner was requesting visitation for a time period for which he stated in court at the time that he was working and would not be spending time with a minor child. Are you talking about the two hours on certain days when he was working when the child was with the grandmother? That's correct. Didn't he testify, though, that on the Fridays and whatever other day it was where he was going to have the whole day, he had the flexibility to schedule himself off on those days? He did have the flexibility, but I think it was a little bit, there was a little bit more than that. That's something that he kind of testified after the fact, after actually going into court and stating, hey, look, he was actually working on those, on that Friday. For two hours, though. Right. It wasn't like the whole time the child was there he was at work. No. And then the child was with the grandmother. Is there any indication in the record that that was not in the child's best interest? There isn't. But again, you get into a situation of trying to have the maximum involvement between a parent and a child. What you ultimately have is, you know, grandparent visitation in these circumstances. And again, when the court is basing a decision on the additional hours when he's not working, the time, and then there's something in the record that he actually is working, I think that there's a little bit of a disconnect there as far as what the court. On top of this, Mr. Laniker, why don't you tell us, what is the evidence that this visitation schedule that the court implemented finally was not in the best interest of the child? I think you look at what the respondent mother had stated. I think you look at the conflict that was between the parties. I believe that you look at some of the other, you know, some of the other things that the father had testified to. For example, when the respondent, when the petitioner father was asked, what is your protocol or what is your plan of action when the child became sick? He stated he didn't know the child could never become sick in his presence. Now, this is somebody who had visitation over a several years period and had had visitation for some time. To say that there's no determination that if the child gets sick, he didn't know what would actually, what he was going to be doing, that doesn't rise to a level of serious endangerment. But it is something that I think is a factor that the court should have taken into consideration. Now, as far as, you know, what, you know, he made sure that somebody was always around. It's something that, you know, and look in some of the other comments and questions here, I think the court should have taken into consideration as far as the best interests. Now, to that extent, I also believe here that there is some issues as far as the actual arbitrariness of that decision. He admitted that he had no specific reason for wanting additional visitation time with a minor child. That he didn't understand what the harm to the child by giving the father the additional hours when he's not working does not clarify the issue. So I think that the real question here, and I think it sort of opens it up here, is was the right burden and was the right standard actually used at the time the court had actually made this decision? And there wasn't really a lot of testimony in there about how the actual visitation would help the child. Certainly there was a lot of mother's context that certainly her concerns were not necessarily addressed in the matter. So our position here, quite long story short, is we believe that, you know, the additional visitation that has been granted by the trial court should be reversed and remanded and should be given some consideration with the standard and the best interests of the child. Well, our standard of review is manifest way, correct? Correct. The court says it's a no-brainer, according to what I read in the transcript. Pretty tough standard for us to say that the opposite conclusion is clearly apparent. Well, if you take a look at that, I think you have to look beyond that one phrase to make a determination as to whether that's against the manifest ways of the evidence. I think one statement like that has to be looked at the context with the rest of the record here. Well, you know, I took the one statement, the one-brainer, but he said he considered Kirstie's testimony. He considered Dr. Osgood's, obviously, testimony and all the other evidence. And that's the conclusion he came to and basically said at this point it's in the best interest to continue with this visitation. But it is subject to change if something should occur to show it's not in the best interest of the child at some future point. And our standard of review is manifest way. Just sitting here hearing this, reading the briefs, that seems fairly reasonable. Well, and I think the court may have misspoke when it stated actually continuing on with the visitation. This is more or less something where we're trying to expand a temporary order of visitation to a permanent order here. So I think that, you know, looking at the actual evidence here in the case, I don't, you know, I agree that the court made a pretty quick ruling here as far as what that extra visitation would be. However, I don't believe that there's, you know, in looking at the length of the case, it's that it's necessarily something I think that it should, that's something that should be remanded to just make sure that we're using the right analysis here. Because I think it cuts a little bit too close to a standard that the Marital Act has, which gets more towards a rebuttable presumption. All right, thank you. Ms. Martinkus. Good afternoon, Your Honors. May it please the court and counsel. I think I want to start with the standard that we're operating under when we determine whether a visitation order would be modified. Because that's clearly what this is. If this was an initial visitation case, the court, and actually the case came out of our office by Mr. Martinkus, and this court reversed the trial court, and the Supreme Court reversed this court. And the Supreme Court's holding now is when we have a, we're basing it on status, if we're looking at visitation, we have a presumption when you're married that visitation is in the children's best interest. So the burden now becomes on the custodial parent to show that visitation is not in the best interest of the child. And if the custodial parent wants to deny or restrict visitation, we're under the serious endangerment standard. In our case here, we had a visitation schedule, a permanent visitation schedule that had been set up, and the parties were operating under that. I filed on behalf of my client. Hold on, hold on. I thought this order that Judge Bachman entered was the first permanent visitation order. No. So you don't think the others are designated as temporary? I believe we had, and Judge, I have to look at the pleadings again, but I was operating under the premise that this was regarding additional visitation. And because he was already getting every other weekend from Friday at 5.30 to Sunday at 5, he's getting Wednesdays from 3.30 to 5.30. And this was our petition to modify that visitation to increase the time based on the Wednesday and the Sunday, and on the Friday and every Wednesday. My position was that that was a permanent visitation schedule in place. I believe, and I may be wrong, Judge, and I'll address both, because I think if it's a modification, it's the same standard. If you have an initial visitation while you're divorced, there's a presumption in that favor of granting visitation. And a parent to Jack, I have, as the non-custodial parent, have the burden. When we modify visitation, it doesn't matter whether it's under the parent to Jack or under the Divorce Act, because the person seeking modification has the burden to prove that additional visitation is in the child's best interest. So either way, whether this is now a, you're operating under a temporary order, or whether we are operating under a permanent order, the standard is the same for the parent to Jack. The presumption is on the person in the parent to Jack seeking to modify that visitation. And when there's a petition to modify visitation under the Marriage Act, if any modification, now the standard or the burden shifts to the party seeking additional visitation. So I think, I guess from my perspective, whether it was an initial or temporary order, or if I filed a petition to modify the visitation, it's the same standard. Well, if the initial order that he entered was temporary, and this is the first permanent order, you've got a different situation than if you're trying to change it. Let me just ask you this. It looked to me like on November 13, 2012, the court issued a written order based on the October 12, 2012 hearing and said the currently existing temporary visitation schedule consists of alternating weekends from 5 p.m. Friday to 5 p.m. Sunday, and Wednesdays from 3.30 to 5.30. And then in November 2013, there's an evidentiary hearing, and I don't know if that was the end of it just on that day. I don't know. It goes into 2014. So it seems to me that as of November 2013, you're still operating under a temporary order, meaning no final order was ever entered concerning visitation. And it may be the case, because we had some delays. But I guess what my position is that this court, in Ray Griffin's, held that where the non-custodial parent seeks to modify visitation's rights, which are originally engraved in a dissolution decree, the burden is on such a parent to show the modification is in the best interest. So for example, what I guess I'm trying to say before I get to the best interest analysis is that if I'm a paternity action, if I file my initial paternity action visitation, I have the burden. If I'm a paternity action and I file a petition to modify the burden, I still have the burden. And so the only distinction in terms of burden is when you're married, there's a presumption in your favor that visitation is the best interest. But when you modify and you're married, there is a presumption that you now have to show that additional visitation is in the best interest of the child. But assuming it's still my burden, which I believe it's my burden to show best interest, the fact of the matter is that I've shown best interest for a child. And so basically my client had every Wednesday off, he testified to the court. He also testified that he would be available for the child. There were some issues whether the grandparents were with him and he was working. But he told the court he would be available to have the child for the entire day. And so basically one week when he had just Wednesdays, he would have an additional five hours of visitation. He also told the court his work schedule allowed him to be off on Fridays and would be able to care for the child every other Friday at 10 a.m. So we were seeking an additional visitation every other week of 12 hours because we had the Wednesday and we also had the Friday. And so the question becomes, is that additional visitation in the child's best interest? This is a young child. She'll be starting kindergarten, I think, in about a year and a half. So there weren't any additional transitions that were going to be made between the parties because we were just increasing the time but following the same day. Dr. Osgood, who was appointed by the court and previous counsel to determine whether or not this additional visitation would be in the child's best interest, testified the closeness of the bond, testified how the child was bonded to him, and she testified this additional visitation would also continue to strengthen the bond that they already had developed and made a compelling argument that that additional visitation would be in the child's best interest. As far as my client testified, that this additional time, especially on Wednesdays, would give him more time with the child rather than the two hours he had on Wednesdays. And the only evidence that was presented by the defendant, and when I asked her why she felt that this additional visitation would be not in the best interest of the child, was that she felt the child would have more stress by having these increased hours. And her real position, I think Dr. Osgood hinted that she would believe no additional visitation would be in the child's best interest. And she provided no expert testimony to that effect, and even Dr. Osgood testified, because she had 11 hours of visitation with my client Paul and the minor child, both at his home and out and about, or in her office. And she indicated the concerns that were borne by Ms. Howrey were not evident when she observed the child. And clearly, I think as Judge Blackman indicated, that it was in the child's best interest. We had expert testimony. They had a loving, close relationship. This would allow them to continue to bond more. And my client's position is that to have the additional five hours every other week, and the additional 12 hours every other week, that clearly… Did Kirstie identify any facts as to why this would cause the child more stress? No. Other than she just opined that, and basically no facts to support that opinion? This has been a contentious case. And I think when you read through Dr. Osgood's evaluation, first of all, we had this parenting coordinator because of the animosity that was there. And I think Dr. Osgood, the concerns that she felt were not borne by the evidence. She didn't present any evidence of event-increased anxiety and stress. And when you're looking at visitation for a young child, you're looking at also how many transitions does this child, even an older child, have to make. Here, there weren't any additional transitions because we had visitation on the same days, but we had increased the hours for my client. And I certainly believe that, especially when the visitation schedule has already been established, the more… My client's opinion, and I agree, more visitation is in the best interest of the child because it does help to solidify that relationship. And that's what Dr. Osgood found, that this additional visitation would be in the child's best interest and would continue to solidify the relationship. The relationship between Mr. Toth and his daughter. Any questions? I don't see any. Thank you, judges. Thank you. Mr. Larrick, would you like to respond? Very quickly, in taking a look, I believe that the court is correct. This was a temporary visitation order from 2012. It wasn't a permanent order which was entered by the court. The court had actually entered that order contingent on Judy Osgood becoming involved in the case and making some determinations as far as what the visitation would be during some of those limited periods. I would say here that, you know, Ms. Martinkus does talk about the parties having a lot of contention. That is certainly true. And this is a matter where there is more contention than the average case. In looking at the record, there have been call calls made to authorities, back and forth from people. The visitation is something that is occurring at the Urbana Police Station. The exchanges. The exchanges. That's correct. And that's going on on a regular basis. And, I mean, the amount of animosity there is quite high. The court didn't take into account any of that conflict when he made this determination, and neither did Dr. Osgood, when she tried to determine whether this extended visitation would create any more animosity between the parties, which would actually cause there to be some more after effects. Now, as far as the visitation that's been happening, our contention is the visitation that the petitioner is getting is adequate at this point. It's certainly something that it's a young child. He is getting the visitation at this point. And it's something that, considering the issues that animosity between the parties, and considering the standard, is something that I think that the court should have taken a little bit more. The court should have looked more at what the best interest standard would be. And I believe that Ms. Howery did speak about, in the record, specific instances, at least in March, where they had the exchanges of the visitation and there had been some contention between the parties. And the fact was, this is a child that's three or four years old. So you have to look at, and I think this goes back to a best interest standard under the paternity of DAW, you have to look at the totality of the circumstances here. And the totality of the circumstances are, we have an action where, right now, there's visitation which is occurring. It's not really been shown, in consideration of all the context of the information we have, that it would be in the best interest of the minor child. Isn't the grandmother helping to effectuate the transfer of the child at the police department? Well, that is true. And that actually did come up where the one thing the court had requested was that the petitioner would actually be there to facilitate the transfers. But at this point, the grandparents have been. And part of, I believe, the reason for that was because of the petitioner's work schedule during the time of the exchanges. My impression from what I've read was that it was due to the fact that there was a lot of tension between the parties. That the grandparents could make that transition in a less stressful way for the child than the parents could. Is that not correct? Well, I think that, in any case, the tension has continued for whatever reason. So, the exchanges have been continuing and the court continued to have the exchanges at the police station. So, I don't think that that's been a situation that's been diffused. Well, is your argument concluded? It is. I have about this much sympathy for the stress or the tension that the parties feel. I think, perhaps, the focus should be on whatever tension the child feels. And if the child feels tension, it is borne upon that child by one parent or the other. The child doesn't create the tension. I find it distasteful and unseemly that the exchange has to take place at a police station. And if I were the trial judge, which I'm not, I would be tempted to arrive at the visitation exchange place, the jail, the police station. And if one party arched their eyebrow or frowned, I would not only stop visitation, I would remove custody from the custodial parent. And I'm presuming that your client is present in the courtroom. And I don't want her to feel that I'm speaking to her. I'm speaking to both parties. I'm speaking to the grandparents. And whatever Judge Blockman said, and I've read that part of the record, I would have said it in a much more straightforward fashion. And tried to have been much more direct and much more emphatic. Nobody cares whether these parents like each other. Nobody cares what has happened in the past. All we ought to be caring about is how it affects the child. And can you imagine being in kindergarten and explaining to your classmates when you go on a field trip, that's where I get to see my mom, or that's where I get to see my dad. You know, we go to the police station because that's where we have to get together. We can't get together anywhere else because somebody might get mad. What a wonderful future that child has. It's a trial, Steve. All right. We'll recess. We'll take the matter under advisement. Thank you.